UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 13-25-ART-EBA-(3) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BILLY JEROME SHEPHERD, | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Does a doctor's examination violate a defendant's constitutional right to be free from unreasonable searches? In this case, where police officers transported a semi-conscious defendant to a hospital after perceiving a medical emergency, but did not request any medical tests, the doctor's examination did not trigger Fourth Amendment concerns. And because there was ample admissible evidence to seize narcotics from the defendant's person with probable cause and a warrant, the drugs should be allowed as evidence at trial.

## BACKGROUND

The magistrate judge thoroughly described the circumstances giving rise to the present motion to suppress in his report and recommendation so only a brief summary is necessary. R. 144. In 2013, police officers received a tip from a confidential informant about his plan to drive with a co-defendant across state lines to purchase drugs. R. 134-1 (Investigative report); Audio Recording of Hearing on July 17, 2014 [hereinafter "AR"] at 1:45–2:31 (Testimony of Officer Thompson). The officers confirmed the tip by conducting surveillance on the confidential informant and co-defendant's car. AR 3:20–3:46 (Testimony

1

of Officer Thompson). Upon executing a coordinated traffic stop of the vehicle, the officers noticed defendant Billy Shepherd "laying on his side and crying in the back seat." R. 134-3 (Affidavit in support of a warrant); AR at 9:13–9:36 (Testimony of Officer Thompson); AR at 1:31:55–1:32:01 (Testimony of Sergent Peppi). The officers also detected an "odor of feces" and observed Shepherd drift "in and out of consciousness." R. 134-1; R. 134-3; AR at 16:30–17:00 (Testimony of Officer Thompson). The confidential informant and the co-defendant then told the officers that Shepherd had taken possession of all the drugs they had purchased, and that the drugs were likely located in Shepherd's "pelvic area." R. 134-1; AR at 13:54–14:32 (Testimony of Officer Thompson). Based on this information and their training and experience, the officers feared that Shepherd had smuggled narcotics in his rectum that were presently entering his system. AR 16:59–17:11 (Testimony of Officer Thompson). The officers' concerns about Shepherd's health and well-being intensified when he became unresponsive in the back of their cruiser. AR 1:33:20–1:34:17 (Testimony of Sergent Peppi). The officers immediately drove to the Highlands Regional Medical Center, the closest hospital to the area. AR 15:22–16:04 (Testimony of Officer Thompson). There, they told emergency room physician Dr. Andrew Mutiso that they believed Shepherd had drugs in his rectal cavity. AR 16:36–17:10 (Testimony of Officer Thompson).

Dr. Mutiso then conducted several medical tests including a neurological examination, a urinalysis, an x-ray, an attempted digital rectal examination, and a CT scan. AR 56:06–1:01:12 (Testimony of Dr. Mutiso). At no point did the officers direct or request Dr. Mutiso to conduct any examination. AR at 19:29–19:44 (Testimony of Officer Thompson); 1:04:27–1:04:54 (Testimony of Dr. Mutiso). When Shepherd became combative during the examination, the officers handcuffed him for his and Dr. Mutiso's

safety. R. 134-6 (medical record); AR at 17:55–18:11 (Testimony of Officer Thompson). After Dr. Mutiso conducted the examinations, he told the officers that while Shepherd seemed to have multiple capsules in his rectum, none appeared to have been perforated or ruptured. AR at 1:35:58–1:36:04 (Testimony of Sergent Peppi). The officers used the results of the medical examinations, along with their own observations and experiences, to successfully apply for a search warrant to remove the mass of capsules from Shepherd. AR at 20:30–21:32 (Testimony of Officer Thompson). The capsules contained drugs, which Shepherd now seeks to exclude from evidence in the present criminal matter.

## DISCUSSION

Shepherd challenges Dr. Mutiso's medical examination as a violation of his Fourth Amendment right to be free from unreasonable searches and seizures.[1] R. 134 at 4–6; R. 147. Shepherd characterizes this examination as an impermissible search incident to his arrest and argues that the drugs should be suppressed as a fruit of this unconstitutional act. *Id.* Magistrate Judge Edward Atkins issued a report and recommendation denying Shepherd's motion to suppress. R. 141; R. 144. In his report, Magistrate Judge Atkins concluded that Dr. Mutiso's conduct did not amount to a "search" in violation of the Fourth Amendment and accordingly did not warrant suppression of the drugs. R. 144. Shepherd raised the same challenge to Dr. Mutiso's examination in his objection to the report and recommendation. R. 147. Accordingly, this Court reviews the recommendation de novo.

---

[1] Shepherd also challenged the completeness of the chain of custody of the evidence from the body cavity search. R. 134 at 1. However, Shepherd did not object to Magistrate Judge Atkins's recommendation that this argument be addressed at trial. R. 144 at 5. A party's failure to object to a portion of the report and recommendation waives the party's right to review. Fed. R. Crim. P. 59(b)(2). Accordingly, this Court will not address Shepherd's chain-of-custody argument.

3

*See* Fed. R. Crim. P. 59(b)(3); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citation omitted).

The Court must first determine the "threshold question" of whether a challenged act is a search that implicates the Fourth Amendment at all. *Harajli v. Huron Twp.*, 365 F.3d 501, 505 (6th Cir. 2004). As the Fourth Amendment only prohibits unreasonable searches by the government, the inquiry ends if a private party conducts the search without government involvement. *United States v. Coleman*, 628 F.2d 961, 964–65 (6th Cir. 1980). But if the Court concludes that the challenged conduct is a government search, the analysis is not over. The Court must then determine whether the search was "reasonable" and, if not, whether excluding the fruits of the search is an appropriate sanction. As it turns out, this case does not require the Court to pursue multiple lines of inquiry. Why? Because Dr. Mutiso's medical examination does not amount to a government-instigated search. Dr. Mutiso examined Shepherd to determine whether he was in immediate danger, and the officers did not request him to conduct medical tests. Accordingly, Dr. Mutiso's conduct does not implicate the Fourth Amendment. And there was ample admissible evidence to provide probable cause for the warrant to obtain drugs from Shepherd's person. For these reasons, the Court adopts the conclusion in the report and recommendation and denies Shepherd's motion to suppress.

**I.     Dr. Mutiso's Examination Was Not A Search Under the Fourth Amendment.**

The Fourth Amendment's guarantee against "unreasonable searches and seizures" applies only to government action. U.S. Const. amend. IV; *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989); *United States v. Jacobsen*, 466 U.S. 109, 113–114 (1984). However, a private individual's search may violate the Fourth Amendment if he acts as a

government agent. *Skinner*, 489 U.S. at 614; *Jacobsen*, 466 U.S. at 113–14. As Dr. Mutiso is a private individual, his medical examination constitutes a search only if he meets a two-part test for determining whether he is a police agent: First, the police must have "instigated, encouraged[,] or participated in the search," and second, Dr. Mutiso must have "engaged in the search with the intent of assisting the police in their investigative efforts." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). This inquiry, however, should be resolved "in light of all the circumstances." *Skinner*, 489 U.S. at 614–15.

Shepherd maintains that the police instigated, encouraged, and participated in Dr. Mutiso's search. After all, Shepherd argues, police officers transported him to the hospital, handcuffed him to the bed, and "had a body cavity search done" without his consent. R. 147. Shepherd supports his claim by comparing the facts of his case to those in *United States v. Booker*, 728 F.3d 535 (6th Cir. 2013). R. 147 at 3. In *Booker*, officers transported a fully-conscious defendant to a doctor because they suspected the defendant of smuggling drugs in his rectal cavity. *Id.* at 538. The doctor administered a paralytic agent rendering the defendant totally unconscious, intubated him, and proceeded to remove drugs from his rectal cavity—all without his consent. *Id.* at 539–40. The Sixth Circuit found that the doctor "searched" the defendant as a government agent because the police had physical control of the defendant, knew that he did not consent to the doctor's search, and knew what the doctor was going to do. *Id.* at 541.

On the surface, the facts of this case seem sufficiently analogous to those in *Booker* to reach the same conclusion—Shepherd insists that police initiated, encouraged, or participated in Dr. Mutiso's search, and that Dr. Mutiso acted to further the police officers' aims. Yet there are critical distinctions that require the present case to be differentiated from *Booker*.

5

The *Booker* court limited its decision to the circumstances of the case and declined to address situations that "may be materially different," including where "exigencies" are at play. 728 F.3d at 537, 547–48. There, the police had previously brought other defendants to the same doctor to perform rectal examinations including when at least one defendant had "no physical symptoms and . . . normal vital signs." *Id.* at 538. Absent police direction, the doctor's actions would have amounted to an unlawful medical battery under state law. *Id.* at 542–43. The police officers appeared to use the doctor to search defendants in cases where neither the government nor the doctor could do so alone. *Id.* at 548. In contrast, the officers in the present case took a detour from their trip to the jail to take Shepherd to the Highland Regional Medical Center. AR 1:33:49–1:34:25 (Testimony of Sergent Peppi noting that his initial plan was to take Shepherd to the jail). The officers made this decision out of concern for Shepherd's health, as he had been drifting in and out of consciousness, and actually became "unresponsive" in the back of their police cruiser. AR 15:27–16:01 (Testimony of Officer Thompson). There is no evidence that the officers knew Dr. Mutiso, or that they asked him to conduct particular tests on Shepherd. *See* AR at 19:29–19:44 (Testimony of Officer Thompson); 1:04:27–1:04:54 (Testimony of Dr. Mutiso). And the doctor acted lawfully by treating Shepherd's potentially life-threatening condition. *See Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000) (holding that while a physician commits a battery by treating a patient without consent, this rule does not apply in emergency situations).

Indeed, the facts seem closer to those in *United States v. Black*—a case where the Sixth Circuit found that a doctor's body cavity examination did *not* amount to a government search. 860 F.2d 1080 (6th Cir. 1988) (per curiam) (unpublished). In *Black*, police officers took an unconscious passenger from an airplane to an emergency room. *Id.* at *1. The

6

emergency room doctor conducted a thorough examination and an x-ray, during which he discovered a package containing crack cocaine in the defendant's vagina. *Id.* The police did not request the examination, and the doctor's procedures were standard in cases of suspected drug overdose and smuggling. *Id.* at *3. Under such circumstances, the doctor's examination amounted to private action. *Id.*; *see also United States v. Chukwubike*, 956 F.2d 209 (9th Cir. 1992) (determining that invasions of the body by doctors for medical purposes are neither a search nor a seizure). Here, the police took Shepherd to the hospital under similar emergency conditions. The police did not request Dr. Mutiso to perform any tests, but merely alerted him to Shepherd's potentially serious health condition. Accordingly, Dr. Mutiso's examinations were like efforts to "form a conclusive diagnosis and render appropriate treatment" that the *Black* court found did not constitute a government search. 860 F.2d at *3. Based on the particular facts of this case, the police officers did not instigate, encourage, participate in, or transform into a government search Dr. Mutiso's private medical examination.

Yet Shepherd maintains that Dr. Mutiso's examination was, in fact, a search to aid police officers to uncover evidence. He points out that Dr. Mutiso did not administer any treatment and that he concluded that Shepherd's condition was not life threatening. R. 147 at 2. But just because Dr. Mutiso ultimately determined that Shepherd was in a stable condition does not mean that Shepherd had been all right all along. Indeed, Dr. Mutiso noted that Shepherd's medical condition was "life threatening." AR 1:12:15–1:12:30 (Testimony of Dr. Mutiso). It is unclear what Shepherd would have preferred Dr. Mutiso to do in this case. Wait to see if he completely lost consciousness before taking action? Stand by and hope that Shepherd did not die? Not only would these alternatives have been unreasonable, but they

would have likely been unlawful. *See Noble v. Sartori*, 799 S.W.2d 8 (Ky. 1990) (holding that a physician breached his duty of care when he was available and able to treat a patient, but did not do so).

Shepherd points to no evidence that Dr. Mutiso intended to aid the police in their investigation. The officers never indicated that they needed Dr. Mutiso's assistance for investigatory purposes. In fact, they were not investigating *whether* Shepherd had drugs—that much the officers seemed to have gathered through their observations and through the statements of the confidential informant and co-defendant. Instead, the officers sought to ensure that Shepherd was not experiencing a life-threatening condition. *See* AR 16:59–17:11 (Testimony of Officer Thompson) (justifying the trip to the emergency room on the fear that the containers of drugs in Shepherd's rectum had burst); AR 1:34:18–1:34:26 (Testimony of Sergent Peppi) (indicating that he wanted to go to the hospital because he did not want Shepherd to "die in [his] cruiser"). This is consistent with the police officers' affirmative duty to protect those in their control. *See Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir. 1998) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)) (noting that officers have an obligation to keep from harm an individual they have deprived of liberty). As this responsibility is distinct from the police officers' "investigative efforts," Dr. Mutiso's search did not aid police in their objective to search for and recover evidence. Rather, his conduct assisted the police officers in their duty to take reasonable care of Shepherd's "basic human needs" while he was in their custody and control. *Id.* (citing *DeShaney*, 489 U.S. at 200).

That Dr. Mutiso's conduct was private action is confirmed by other cases that remove police officers' "community caretaking" activities from the ambit of the Fourth Amendment.

8

*See, e.g.*, *United States v. Rodriguez-Morales*, 929 F.2d 780, 784–85 (1st Cir. 1991) (noting that the police officer is a "jack-of-all-emergencies" who is expected to "aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety") (quoting W. LaFave, Search and Seizure 5.4(c) (2d ed. 1987)). In *United States v. Coleman*, the Sixth Circuit found that police officer presence did not affect a private repossession of a vehicle where the police merely stood by to keep the peace. 628 F.2d 961, 964 (6th Cir. 1980). By monitoring and taking custody of evidence from the seizure, the police acted in a manner that is "totally divorced from the detection, investigation, or acquisition of evidence." *Id.* at 965. The court accordingly concluded that the police conduct did not trigger the Fourth Amendment. *Id.* Similarly, the police officers' efforts to prevent Shepherd from harming Dr. Mutiso during the medical procedures did not transform the examination into a government search.

Because Dr. Mutiso examined Shepherd to determine whether he was in danger after police officers found him "unresponsive" in the back of their cruiser, he acted as a private party. Since he did not function as a government agent, his "search" does not trigger the Fourth Amendment.

II. **As Dr. Mutiso's Conduct Was Not a Government-Initiated Search, the Results from the Examination Were Properly Included in the Warrant.**

In this case, the officers referred to four main sources of evidence in support of their application for a search warrant: 1) Their observations of Shepherd crying in the car and smelling of feces; 2) the confidential informant and co-defendant's statements that Shepherd had illegal drugs in his "pelvic region"; 3) Dr. Mutiso's examination; and 4) the officers' knowledge and experience about smuggling drugs in body cavities. R. 134-3. Because Dr.

Mutiso's examination was not a "search" by the government, the medical results could properly be included in the warrant application as observations from a private party. The Sixth Circuit found probable cause to find that a suspect had committed a drug trafficking offense with even less evidence: The officers had information that defendants were transporting drugs from a reliable confidential source, and a passenger in the detained car told the police that the defendant had hidden drugs in his "crotch area." *United States v. Smith*, 549 F.3d 355, 360 (6th Cir. 2008). Accordingly, the officers in this case obtained more than enough evidence to amount to probable cause, allowing them to legally obtain the drugs from Shepherd's body cavity.

## CONCLUSION

Police officers do not merely conduct investigations to uncover evidence of criminal activity. As part of their duties, officers must preserve the health of defendants in their custody and ensure the safety of third parties. This responsibility may require officers to bring suspects to a hospital for treatment. The doctors administering treatment to these suspects do not engage in a "search" for the purposes of the Fourth Amendment. Accordingly, Dr. Mutiso's examination of Shepherd to determine whether he was suffering from a life-threatening condition was private action not subject to Fourth Amendment analysis. And because Dr. Mutiso acted independently, the medical information that he gathered could be used—along with the police officers' observations and experience—to apply for a search warrant. The resulting warrant was supported by probable cause, and the drugs Shepherd smuggled are therefore admissible as evidence.

Accordingly, it is **ORDERED** that:

(1) The Court **ADOPTS** Magistrate Judge Atkins's recommended disposition, R. 144.

(2) The defendant's motion to suppress, R. 134, is **DENIED**.

This the 15th day of September, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge